**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**GREGORY LAMONT PHILLIPS,**<br><br>    **Defendant.** | **Case No. 25-MJ-186** |

**EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE**
**AND *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge Matthew J. Sharbaugh issued on August 29, 2025. Specifically, the United States requests the Court: (i) stay Magistrate Judge Sharbaugh's order releasing the Defendant; and (ii) grant a *de novo* review of Magistrate Judge Sharbaugh's denial of the United States's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm). The Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release.

The Defendant stands before this Court charged with illegally possessing a Glock handgun with a thirty-one-round magazine, loaded with thirty-three rounds of ammunition. The Defendant possessed this firearm despite having been recently convicted of Carrying a Pistol Without a License.[1] The Defendant was only on supervision for that offense for seven months before being arrested on another firearms offense. With this newest offense, the Defendant consciously chose

---

[1] District of Columbia, Superior Court, 2024-CF2-010247 Carrying a Pistol Without a License (Sentenced to one year of confinement, one year suspended, and eighteen months of supervised probation).

to continue endangering the community with his illegal firearm possession, and to willfully violate his court supervision. Accordingly, the Court should detain the Defendant pending trial.

## **PROCEDURAL HISTORY**

On August 27, 2025, the United States filed a complaint charging the Defendant with Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1).  On August 28, 2025, an initial appearance was held before the Honorable Magistrate Judge Zia M. Faruqui. On August 29, 2025, a detention hearing was held before the Honorable Magistrate Judge Matthew J. Sharbaugh at which time the Government requested that the Defendant be detained pending trial. Magistrate Judge Sharbaugh denied the Government's request ordering the Defendant be released.

## **BACKGROUND**

On August 27, 2025, at approximately 1:17 AM, Metropolitan Police Department (MPD) Officer Thomas Schemmel and MPD Officer Anthony Willis, in full uniform, were patrolling the 3600 block of Jay Street NE in Washington, DC, operating an unmarked MPD cruiser. The officers were aware that in the past thirty days, Shotspotter had detected numerous sounds of gunshots I the Mayfair Paradise area, which includes the 3600 block of Jay Street NE.

The officers observed a vehicle parked with lights on and the engine running in the rear of 3697 Jay Street NE. The officers observed that the vehicle was occupied by an individual, later identified as the Defendant, in the front passenger seat. As the officers approached, the Defendant rolled down the window. The officers observed that the Defendant was smoking a hand-rolled cigarette. There was no one else in the vehicle.

Officer Schemmel and Officer Willis made contact with the Defendant. Officer Schemmel and Officer Willis observed that the hand-rolled cigarette was actively burning and there was white

smoke in the vehicle. Officer Willis detected an odor consistent with marijuana emanating from the vehicle.

Officer Schemmel reached into the vehicle through the open window and opened the door, directing the Defendant to step out of the vehicle in order to effectuate an arrest pursuant to D.C. Code § 48-911.01(a)(2). The Defendant did not step out of the vehicle and asked to call his girlfriend. Officer Schemmel told the Defendant to put the phone down. The Defendant then quickly got into the driver's seat and attempted to flee from law enforcement. Officer Willis could hear that the Defendant was pressing his foot on the gas pedal because the engine was revving. Officer Schemmel was able to prevent the gear shift from being placed into drive and was then able to take the keys out of the ignition. Other federal agents then deployed their tasers in order to safely detain the Defendant.

The Defendant was placed under arrest for Public Consumption, in violation of D.C. Code § 48-911.01(a)(2), and Resisting Arrest, in violation of D.C. Code § 22-405.01. During the search incident to arrest, the Defendant spontaneously stated, "It's right there! It's right there! It's right there!" Officer Willis then conducted a protective pat down of the Defendant's front waistband area and felt what he immediately knew to be the handle of a firearm.



*Figure 1 – Firearm recovered from PHILLIPS' front waistband area.*

Officer Schemmel recovered the firearm, which was later determined to be a Black Glock 9mm firearm with serial number LZR933. There were zero rounds of ammunition in the chamber and 33 rounds of ammunition in a 31-round large capacity feeding device (two extra rounds were in the device).

## <u>ARGUMENT</u>

I.  **This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review**

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant

the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No. 23-CR-00044, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, 'stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision.' (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.").

The United States is aware of the Honorable Magistrate Judge Zia M. Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025). Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the United States's request for *de novo* review of the Magistrate Judge's release order, the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009). The United States, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Thus, the United States seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors. As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C.

Cir. Mar. 24, 2004). Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

## II.    *De Novo* Review of the Magistrate's Release Order

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The United States must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, 18 U.S.C. § 3145(a) states:

  **(a) Review of a release order –** If a person is ordered released by a magistrate, …

   (1) the attorney for the Government may file, with the court having
       original jurisdiction over the offense, a motion for revocation of
       the order or amendment of the conditions of release . . .

   The motion shall be determined promptly.

On the United States's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the United States respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the Defendant's appearance at future proceedings.

## A. Nature and Circumstances of the Offense Charged

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is clear that the Defendant carried a loaded firearm concealed in his waistband. The status of the weapon when it was found is further cause for concern. The firearm had an extended thirty-one-round magazine, loaded with thirty-three rounds of ammunition. The presence of an extended magazine should cause serious concern for the Court on whether the Defendant is a danger to the community.

This offense initiated with the Defendant's refusal to comply with law enforcement. Specifically, the Defendant was asked to step out of the vehicle and did not comply. The Defendant then quickly got into the driver's seat of the vehicle and attempted to flee law enforcement. What is particularly concerning is that officers could hear the vehicle revving from the Defendant's foot was on the gas pedal while officers were attempting to prevent the gear shift from being moved. Multiple officers were surrounding the vehicle at that time, and the Defendant's actions put those officers at risk of serious bodily harm from being potentially ran over by the Defendant's vehicle. Given the above, the nature and circumstances of this offense weigh heavily in favor of detention.

## B. Weight of the Evidence Against Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The Government's case against Defendant is strong. The instant offense was captured fully on body worn camera and the firearm itself was found in the Defendant's waistband. Additionally, the Defendant directed officers to the location of the firearm once he was detained. Therefore, the strength of the evidence against Defendant weighs in favor of detention.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. Therefore, the weight and strength of the evidence in the present case increases the likelihood that the Defendant will fail to return to Court and present a danger to the community if released.

### C. History and Characteristics of Defendant

The third factor, the Defendant's history and characteristics, weighs in favor of detention. The Defendant was recently convicted in Superior Court of Carrying a Pistol Without a License. According to the Proffer of Facts filed in that matter (2024-CF2-010247):

[I]n the early evening of October 10, 2024, the defendant was driving northbound on Georgia Avenue NW, Washington D.C. After observing a traffic violation, officers with Metropolitan Police Department stopped the defendant. After the defendant exited the car, and as police began to search the vehicle, the defendant told police he had a firearm in the glove box. In the glove box, police found a Smith & Wesson SD40VE .40 caliber firearm bearing serial number DXA8094, loaded with 1 round in the chamber and 9 in the magazine.

The Defendant's current offense demonstrates not only a pattern of illegal gun possession but an escalation in dangerous behavior. In 2024, the Defendant's firearm was loaded with ten rounds of ammunition. In the present case, the Defendant was in possession of a firearm with an extended magazine loaded with thirty-three rounds of ammunition.

Additionally, the Defendant was on probation for his 2024 conviction when he committed the present offense. According to the Defendant's Pretrial Services Report (PSR), the Defendant failed to comply with the Violence Reduction Program as part of his probation and failed to report for drug testing on one occasion. According the PSR, the Defendant was only described as being "somewhat compliant" with the terms of his probation even before the present offense. That should give this Court serious pause that the Defendant will comply with conditions of release.

**D. Danger to the Community**

The fourth and final factor, danger to any person or the community posed by Defendant's release, overwhelmingly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the

defendant presents an extreme safety risk to the public.").

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Despite knowing he was a convicted felon, Defendant possessed a firearm, with an extended magazine. The Defendant's willingness to repeatedly carry firearms and his willingness to attempt to flee from law enforcement—causing a serious risk of danger to law enforcement—demonstrates the danger he poses to the community. Therefore, this factor weighs in favor of detention.

III. **A Third-Party Custodian Cannot Ensure the Safety of the Community.**

Magistrate Judge Sharbaugh found that the Defendant's significant other could effectively supervise the Defendant and mitigate the danger he presents. The United States respectfully disagrees.

While courts have endorsed third-party custodians, such a custodian makes more sense where a defendant is young and willing to submit to an authority figure. *See United States v. Long*, 2020 WL 2434588 at *2 (W.D. Pa.) ("An authority figure who enters the picture and takes charge of a young and unsophisticated offender provides greater protection to the community than does a third-party custodian who is essentially a peer (or spouse in this case) of the defendant, especially

one who is socially affiliated with the defendant during the time the defendant is alleged to have committed very offenses charged.").

Indeed, the challenge faced by third party custodians, who are essentially being asked to act like correctional officers twenty-four-hours a day for someone they care for deeply, has repeatedly been recognized by courts in this jurisdiction. *See* Order (ECF No. 14), *United States v. Joyner*, 22-CR-252 (D.D.C. Aug. 3, 2022) (reversing the magistrate court's order releasing the defendant to a third-party custodian); Order (ECF No. 55), *United States v. Handy*, 22-CR-164 (same), *aff'd*, Case No. 22-3045, D.C. Cir. (2022); Order, ECF 54, *United States v. Charles Cunningham*, 23-CR-7 (D.D.C. March 13, 2023) ("third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer…. Mr. Cunningham's custodians cannot supervise his behavior on a 24/7 basis."); Order, ECF 18, *United States v. Trevor Wright*, 22-CR-410 (D.D.C. Dec. 23, 2022) ("family members are not correctional officers. Nor should they be expected to play that role").

To convert Defendant's significant other into his warden is simply not a viable solution for keeping the community safe.

## <u>CONCLUSION</u>

The Defendant is eligible for pretrial detention. All four of the Bail Reform Act factors weigh in favor of pretrial detention, and the Defendant poses a serious risk of flight and danger to the community. For these reasons, the United States respectfully requests that: (i) the Defendant be detained pending trial; (ii) a hearing be set as soon as practicable; and (iii) Magistrate Sharbaugh's release order be stayed pending this Court's review.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ *Jessica Bove*
        JESSICA BOVE
        PA Bar # 328892
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7566
        Jessica.Bove@usdoj.gov